# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

ANDREW THAO

        **Plaintiff,**

      **v.**                                     **Case No. 08-C-0033**

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration
               **Defendant.**

---

## DECISION AND ORDER

In 1996, plaintiff Andrew Thao applied for and was awarded social security disability benefits based on chronic liver disease and an affective disorder. Plaintiff received a liver transplant in October 1998, and four years later the Social Security Administration ("SSA") determined that his condition had improved and terminated his benefits. Plaintiff filed a new application for benefits in February 2004, alleging continued inability to work due to the effects of his liver problem and mental impairment. However, the SSA denied that application, as did an Administrative Law Judge ("ALJ") after a hearing. Plaintiff sought review by the SSA's Appeals Council, but the Council denied his request, making the ALJ's ruling the final decision of the SSA on the 2004 application. See Murphy v. Astrue, 496 F.3d 630, 633 (7th Cir. 2007). Plaintiff now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g).

Under § 405(g), judicial review is highly deferential. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008). The court decides only whether the ALJ's decision is supported by "substantial evidence" and free of harmful legal error. Rice v. Barnhart, 384 F.3d 363, 368-69 (7th Cir. 2004); Scheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is such

relevant evidence as a reasonable person could accept as adequate to support a conclusion. Berger v. Astrue, 516 F.3d 539, 544 (7th Cir. 2008) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Thus, if the record contains conflicting evidence that would allow reasonable minds to differ as to whether the claimant is disabled, the responsibility for that decision falls on the ALJ. Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997). The reviewing court may not displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations. Elder, 529 F.3d at 413. Finally, while the ALJ must build an accurate and logical bridge from the evidence to his conclusion, this duty of articulation is minimal, and minor errors of reasoning or insignificant misstatements of the evidence do not require the court to reverse. See Berger, 516 F.3d at 544-45.[1]

## I. FACTS AND BACKGROUND

### A. Medical Evidence

As indicated above, plaintiff based his initial application for benefits on chronic liver disease. In October 1998, he underwent a liver transplant at the University of Wisconsin Liver Transplant Clinic. (Tr. at 101-14; 129-31; 138-43.) Aside from one rejection episode, he

---

[1]In determining whether a claimant is disabled, the ALJ follows a sequential five-step process. First, the ALJ asks whether the claimant is working. Second, if not, the ALJ determines whether the claimant has a severe mental or physical impairment, i.e. one that significantly limits his physical or mental ability to do basic work activities. Third, if so, the ALJ determines whether the impairment meets or equals any of the presumptively disabling conditions found in the "Listings." If so, the claimant is deemed disabled without further consideration of his ability to work. If not, the ALJ determines the claimant's residual functional capacity ("RFC") for work. If the ALJ finds at step four that the claimant's RFC does not allow him to perform his past work, the burden shifts to the SSA to prove at step five that in light of the claimant's age, education, job experience and functional capacity, the claimant is capable of performing other work that exists in the national economy. Skinner v. Astrue, 478 F.3d 836, 844 n.1 (7th Cir. 2007). The ALJ may summon a vocational expert ("VE") to assist in determining whether the claimant can return to past work or perform other work in the economy. See, e.g., Britton v. Astrue, 521 F.3d 799 (7th Cir. 2008).

2

apparently recovered well from the surgery, with excellent liver function (Tr. at 185; 192), but complained of persistent headaches and abdominal pain when lifting (Tr. at 115). Subsequent diagnostic tests revealed C5-C6 and C6-C7 spondylosis (Tr. at 520), which was believed to be the cause of his headaches (Tr. at 178). He also complained of confusion and stroke-like symptoms, as well as anxiety attacks for which he was referred to a psychiatrist. (Tr. at 115-18; 180-81; 186.)[2]

Plaintiff's treating psychiatrist, Dr. Edmundo Centena, diagnosed depressive disorder, with a GAF of 50-55,[3] and started plaintiff on Lexepro. (Tr. at 250-51.) Initial progress notes reflect improvement with the medication (Tr. at 247-48), but later notes record continued depression (Tr. at 263-67). In an August 16, 2006 report, Dr. Centena lists plaintiff's diagnosis as major depressive disorder, which responded well to treatment, with a GAF of 55/60 and a fair to good prognosis. (Tr. at 539.) However, Dr. Centena went on to opine that plaintiff could not meet competitive standards in any of the mental areas needed to perform even unskilled work. (Tr. at 541.) He further stated that plaintiff suffered marked restriction of activities of daily living and of concentration, persistence and pace (Tr. at 543), indicating that the impairment was of Listing-level severity. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B)

Plaintiff's general care physician, Dr. Tom Bachhuber (Tr. at 278-86; 553-651), also completed a report on plaintiff's functioning, in which he listed plaintiff's diagnoses as cirrhosis

---

[2]Plaintiff also saw a neurologist, Dr. Michael Mitchell, who prescribed medication for plaintiff's headaches, which initially resolved then recurred. An MRI ordered by Dr. Mitchell was normal. (Tr. at 271-77.)

[3]GAF ("Global Assessment of Functioning") is an assessment of the person's overall level of functioning. Set up on a 0-100 scale, scores in the 50-60 range generally denote "moderate symptoms," i.e. "moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32-34 (4th ed. 2000).

of the liver secondary to hepatitis B, cluster headaches, spondylosis and chronic depression/anxiety (Tr. at 545). Dr. Bachhuber opined that due to these conditions plaintiff experienced pain, loss of concentration and intermittent weakness/numbness, which would constantly interfere with the attention needed to perform even simple work tasks. (Tr. at 545-46.) Regarding plaintiff's physical abilities, Dr. Bachhuber stated that plaintiff could walk about two blocks without rest or severe pain; stand about one hour at a time; sit and stand/walk a total of about two hours in an eight hour work day; occasionally lift less than ten pounds but never more; occasionally move his neck and head; and rarely complete postural movements. He further stated that plaintiff would likely be absent more than four days per month based on his conditions.[4] (Tr. at 546-48.)

The SSA engaged several consultants to evaluate plaintiff's condition. On March 23, 2004, state agency medical consultant Dr. Robert Callear completed a physical RFC assessment, opining that plaintiff could perform light work with no other limitations. (Tr. at 227-35.) Likewise, on August 2, 2004, state agency medical consultant Dr. Pat Chan, in another physical RFC assessment, found plaintiff capable of light work. (Tr. at 199-206.) On August 6, 2004, state agency psychological consultant Keith Bauer, PhD., completed a psychiatric review technique report, finding that plaintiff suffered from an affective disorder and an anxiety-related disorder, neither of which met a Listing (Tr. at 207-19), and a mental RFC assessment, opining that plaintiff was not significantly or only moderately limited in the listed areas (Tr. at 195-97).

---

[4]In a previous report, Dr. Bachhuber wrote that plaintiff was "not capable of gainful employment." (Tr. at 551.)

4

## B.    Hearing Testimony

At his hearing, plaintiff testified that he was forty-six years old with a fifth grade education completed in Laos and some additional adult education after he came to the United States.  (Tr. at 717-20; 731.)  He indicated that he last worked as a machinist helper in 1996, a job he held for about three years and which required him to lift more than fifty pounds.  (Tr. at 721-22.)  He stated that prior to that he worked for five years packing cookies, which required him to lift about thirty pounds.  (Tr. at 722-23.)

Plaintiff testified that he stopped working following his liver transplant in 1998, after which he suffered from headaches and loss of concentration.  (Tr. at 724.)  He testified that he also experienced pain in his head, back and hands; pain medication helped but made him dizzy.  (Tr. at 725-26.)  He also indicated that he experienced tightness in the chest, fatigue and shortness of breath related to a heart condition.  (Tr. at 730-31.)

Plaintiff testified that he could stand no more than thirty minutes, sit for about four to five hours and walk one or two blocks.  (Tr. at 726-27.)  He stated that he lived with his three teen-aged children, and they completed most household chores, but he was able to care for his personal hygiene.  (Tr. at 728-32; 735.)  Plaintiff's son confirmed that his father did little around the house.[5]  (Tr. at 742-44.)

The ALJ summoned a VE, Richard Willette, who classified plaintiff's past work as medium to heavy.  (Tr. at 749.)  The ALJ then asked a series of hypothetical questions assuming a man forty-six years old, with a less than high school education and plaintiff's work experience.  The first question assumed the ability to lift twenty pounds occasionally and ten

---

[5]In a written statement, plaintiff's daughter said much the same.  (Tr. at 49-57.)

5

pounds frequently (i.e., light work), with slight problems based on pain, depression and fatigue. (Tr. at 749-50.)  The VE testified that this person could not perform plaintiff's past work at the medium and heavy level, but could perform other jobs such as assembler and hand packager. (Tr. at 751.)  The second question added pain producing a moderate effect on the ability to work, and the VE testified that this limitation would reduce the identified jobs by about 25%. (Tr. at 752.)  The third question assumed severe pain and psychiatric symptoms, which the VE said would eliminate all jobs.  (Tr. at 753-54.)  Finally, the ALJ asked the VE to assume the limitations contained in the reports from Drs. Centena and Bachhuber, which the VE stated would also preclude all work.  (Tr. at 754-55.)

**C.      ALJ's Decision**

The ALJ accepted that plaintiff suffered from severe impairments, including status post-liver transplant, atypical chest pain, cervical spondylosis, anxiety disorder and major depressive order, but found that none met or equaled a Listing.  (Tr. at 12-13.)  The ALJ then determined that plaintiff retained the RFC for light work, with pain and diminished concentration that produced a moderate effect on his ability to perform work activities.  (Tr. at 13.)  In so finding, the ALJ gave "little weight" to the reports from Drs. Bachhuber and Centena; instead, he gave "substantial weight" to the opinions of the state agency consultants.  (Tr. at 16.)  The ALJ also found plaintiff's and his children's statements about the severity of plaintiff's symptoms not entirely credible.  (Tr. at 14; 16.)

Based on this RFC, the ALJ concluded that plaintiff could not return to his past work, but that he could perform other jobs identified by the VE such as assembler and hand packager. (Tr. at 17-18.)  He therefore denied plaintiff's application.

6

## II. DISCUSSION

Plaintiff alleges that the ALJ erred in (1) rejecting the reports of his treating physicians; (2) assessing the credibility of his testimony; and (3) giving little weight to his children's statements.[6]  I address each argument in turn.

### A.    Treating Source Reports

Plaintiff first argues that the ALJ improperly evaluated the reports from his treating physicians, Drs. Bachhuber and Centena.  Under the so-called "treating source" rule, 20 C.F.R. § 404.1527(d)(2), the ALJ must give controlling weight to the medical opinion of a claimant's treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence.  See Bauer v. Astrue, No. 07-3325, 2008 WL 2652887, at *1 (7th Cir. July 8, 2008).  If the record contains substantial contradictory evidence, such that the report cannot be given controlling weight, the ALJ must determine how much weight to give the report by considering a variety of factors, including the length of the treatment relationship; whether the doctor is a specialist; and the degree to which the opinion is consistent with and supported by the other evidence.  See Elder, 529 F.3d at 415; 20 C.F.R. § 404.1527(d); see also SSR 96-2p.  If the ALJ discounts the physician's opinion after considering these factors, the court must allow that decision to stand so long as the ALJ minimally articulated his reasons.  Berger, 516 F.3d at 545.

In the present case, the ALJ gave the treating source reports "little weight."  Regarding Dr. Bachhuber's report, the ALJ stated: "While the claimant saw Dr. Bachuber [sic] on a regular

---

[6]In his main brief, plaintiff alleges six separate errors, but several of his contentions overlap.  Therefore, while I have considered all of his arguments, I have in this decision condensed them to three primary contentions.

7

basis, his progress notes document little in the way of exam findings. Furthermore, his opinion is inconsistent with and not supported by the diagnostic findings which document normal liver functioning and some cervical disease." (Tr. at 16.) Regarding Dr. Centena's report, the ALJ wrote that the "very severe limitations [Centena imposed] are not supported by his progress notes. With medication, Dr. Centena noted that the claimant's [GAF] score had improved to 60, indicative of moderate difficulty in social, occupational and school functioning, which is consistent with the State agency opinion noted above." (Tr. at 16.)

While the ALJ could have provided a more detailed explanation for his conclusions, I cannot find that he erred in this regard. Plaintiff concedes that the reports may not be entitled to controlling weight but complains that the ALJ should not have rejected them outright. However, the ALJ did not entirely reject the reports. He found that plaintiff suffered from the severe impairments listed in the reports; he simply disagreed with the extent of limitation assessed by plaintiff's doctors.

Plaintiff faults the ALJ for failing to note the length of time he treated with Dr. Bachhuber, but the ALJ recognized that plaintiff saw this physician on a "regular basis." In any event, the fact of a long-standing relationship alone does not require the ALJ to adopt a treating doctor's report. See Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006) (noting that while a treating source will have spent more time with the claimant, this fact may also detract from the weight of that physician's testimony, as he may bend over backwards to assist a patient in obtaining benefits). Further, in his main brief plaintiff fails to contest the ALJ's primary reason for giving Dr. Bachhuber's report little weight – the lack of exam findings in the progress notes and the diagnostic findings documenting normal liver functioning and some cervical disease.

In his reply brief, plaintiff notes that Dr. Bachhuber frequently assessed him with various,

8

persistent conditions, but arguments raised for the first time in reply are generally waived. Amerson v. Farrey, 492 F.3d 848, 852 (7th Cir. 2007). In any event, the presence of a medical condition says little about its severity, and plaintiff points to nothing specific in the treatment notes supporting Dr. Bachhuber's severe limitations. See Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment."). Plaintiff further notes in reply that Dr. Bachhuber confirmed the presence of neck and back problems by testing range of motion, palpating the problem areas and checking for spasms. Again, though, plaintiff fails to direct me to specific exam findings supportive of the extreme restrictions contained in Dr. Bachhuber's report.[7] Plaintiff also notes the objective support for his cervical spinal disease and liver problems, but the ALJ acknowledged these conditions, and plaintiff points to nothing in the record supporting greater restrictions based thereon.[8]

---

[7]I note that on July 21, 2004, Dr. Bachhuber did find plaintiff's lower back tender on palpation, with decreased rotation at the waist, decreased side bending and decreased tactile stimulation to the right side of the neck. (Tr. at 580.) But the doctor simply assessed "lumbago" and prescribed Tylenol. (Tr. at 580.) He recommended a consultation with a physical therapist, but as the ALJ noted, it does not appear that plaintiff ever received physical therapy (Tr. at 15), and plaintiff did not mention the problem when he returned to Dr. Bachhuber's office in October 2004 (Tr. at 579). As the ALJ also noted (Tr. at 14), at other times plaintiff's range of motion and strength were documented as normal and he demonstrated no decreased response to tactile stimulation (Tr. at 583). The ALJ further noted the absence of x-rays or other diagnostic tests documenting the extent of plaintiff's back problems, and that his back pain was at times attributed to muscle spasm. (Tr. at 15; 561.) Thus, while the record may contain some support for plaintiff's position, it also contains support for the ALJ's conclusion. Under these circumstances, a reviewing court may not re-weigh the evidence or substitute its judgment for that of the ALJ. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005).

[8]Specifically, the ALJ noted that plaintiff's liver functioning was generally normal. (Tr. at 14; 16.) Plaintiff states that Dr. Bachhuber pointed to the presence of a foreign organ in

9

Plaintiff acknowledges the lack of objective medical findings supporting his claims of headaches, dizziness or chest pain and tightness, but notes that the ALJ may not reject a claimant's statements about his symptoms based solely on lack of substantiation by objective medical evidence. (Pl.'s Reply Br. at 3, citing SSR 96-7p.) The ALJ did not violate this Ruling; he found that plaintiff suffered pain in the head, neck, back, chest and hands, but that such pain would have only a moderate effect on his ability to work. (Tr. at 13.) Therefore, for all of these reasons, I can find no error in the ALJ's treatment of Dr. Bachhuber's report.

Nor can I find such error in his evaluation of Dr. Centena's report. The ALJ discounted this report because Dr. Centena's treatment notes did not support severe restrictions, a conclusion plaintiff does not challenge. The ALJ also noted that these severe restrictions appear to be inconsistent with plaintiff's GAF score of 60 (indicative of only moderate symptoms, as the state agency consultant found), "good" response to treatment, and "fair to good" prognosis. (Tr. at 16; 539.) The ALJ may discount a treating physician's medical opinion it is internally inconsistent or inconsistent with the opinion of a consulting physician. Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007). In his reply brief, plaintiff faults the ALJ for failing to expand in detail on how the record falls short (Pl.'s Reply Br. at 4), but the ALJ need only minimally articulate the basis for his decision, Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004).

Plaintiff notes that according to Dr. Centena's report his mental impairment was of

_____

plaintiff's body as the source of many of his symptoms. (Pl.'s Reply Br. at 3.) But plaintiff fails to provide a record citation for this assertion, and in a case with an administrative record of 758 pages a party cannot expect the court to search for particular, underlying information. See Gates v. Caterpillar, Inc., 513 F.3d 680, 688 n.4 (7th Cir. 2008). In any event, plaintiff fails to explain how this supports Dr. Bachhuber's severe restrictions.

10

Listing-severity, but the ALJ independently concluded that the limitations were not so severe as Centena believed.  To the extent that plaintiff is claiming the ALJ "played doctor," see Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."), his argument fails.  The ALJ is under no obligation to accept a treating source's opinion on the Listings, see 20 C.F.R. § 416.927(e)(2), and the ALJ permissibly found the state agency consultant's opinion more persuasive in this case.

Plaintiff also claims that the ALJ did not truly consider his mental RFC, but the decision shows otherwise.  The ALJ discussed plaintiff's mental health treatment, concentration, activities and social interaction, concluding: "The claimant's normal mental status exam, improved mood, and activities of daily living do not support the intensity of the alleged mental health limitations." (Tr. at 15.)  The ALJ did not neglect the issue of mental RFC, he simply reached an unfavorable conclusion.[9]

## B.    Credibility of Plaintiff's Testimony

Plaintiff's second assignment of error pertains to the ALJ's assessment of the credibility of his testimony.  Under SSR 96-7p, the ALJ must follow a two-step process in evaluating the claimant's testimony and statements about symptoms such as pain, fatigue or weakness.  First, the ALJ must consider whether the claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms.  If not, the symptoms cannot be found to affect the claimant's ability to work.  Second, if the ALJ finds that

_____

[9]I note that the regulations do not appear to require the same specificity in setting out mental RFC as with physical RFC.  See Lechner v. Barnhart, 321 F. Supp. 2d 1015, 1036 (E.D. Wis. 2004).

11

the claimant has an impairment that could produce the symptoms alleged, the ALJ must determine the extent to which they limit the claimant's ability to work. If the claimant's statements are not substantiated by objective medical evidence, the ALJ must make a credibility finding based on an evaluation of the entire case record, considering factors such as the claimant's daily activities; the duration, frequency and intensity of the symptoms; precipitating and aggravating factors; treatment modalities; and functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

SSR 96-7p requires the ALJ to provide specific reasons for his credibility determination, grounded in the evidence. See, e.g., Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003). However, assuming compliance with the regulations, judicial review is highly deferential. Because the ALJ is in the best position to see and hear the witnesses, and because of his greater immersion in the record as a whole and specialized expertise with the type of case under review, Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004), the court will reverse only if the claimant can show the credibility finding is "patently wrong," Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003); see also Berger, 516 F.3d at 546.

In the present case, the ALJ accepted that plaintiff suffered from conditions that could produce the symptoms alleged, but found plaintiff's statements about the nature and extent of those symptoms "not entirely credible." (Tr. at 14.) In support of this finding, the ALJ cited the lack of objective medical support, plaintiff's inconsistent statements and medical treatment, and plaintiff's activities. (Tr. at 14-16.) Plaintiff first notes the Seventh Circuit's admonition "against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006). But some weight is appropriate, id., and in this case the ALJ did not rely solely on plaintiff's

12

activities; he cited several other factors as well, in a thorough 2 ½ page analysis of plaintiff's credibility under the SSR 96-7p standards.

Plaintiff next alleges that the ALJ relied on false information – that his first report of headaches came about a year after the transplant – in assessing credibility. It is true that the medical records note such a complaint in November 1998, about one month after the operation. However, I cannot find that this slight misstatement infects the entire credibility analysis. See Berger, 516 F.3d at 544-45. The records go on to show that plaintiff's headaches resolved, and plaintiff "did well" until October 1999, a year after the transplant. (Tr. at 120.)

Plaintiff next complains about the ALJ's reliance on his lack of treatment for, and the absence of objective evidence of, his back problems. As indicated above, under SSR 96-7p the ALJ may not reject a complaint based solely on a lack of objective medical evidence. But the ALJ did not dismiss plaintiff's back pain entirely; rather, he found plaintiff's testimony about the severity of that pain overstated. There is no impediment to an ALJ considering, as part of the entire record, a claimant's minimal treatment for pain he claims to be severe. See, e.g., Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) ("While a hearing officer may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the officer may consider that as probative of the claimant's credibility.").

Plaintiff also contends that the ALJ violated the non-compliance regulation, 20 C.F.R. 404.1530, in noting his failure to seek recommended medical treatment.[10] In Shramek v. Apfel,

_____

[10]Section 404.1530 explains that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."

13

226 F.3d 809, 812-13 (7th Cir. 2000), the court, citing this regulation, rejected an ALJ's reliance on the claimant's failure to quit smoking, as recommended by her doctor, where the ALJ made no finding that quitting would restore the claimant's ability to work, and the record did not support such a finding. But the Seventh Circuit has never held that the ALJ is forbidden from factoring a claimant's failure to obtain treatment into the credibility analysis. See, e.g., Roper v. Astrue, No. 2:07-CV-247, 2008 WL 1925073, at *9 (N.D. Ind. May 1, 2008) (distinguishing violation of the non-compliance regulation from a proper consideration of the medical evidence in evaluating credibility). In any event, even if the ALJ erred in venturing into this area, I cannot find the error harmful, as the ALJ cited various other reasons for finding plaintiff less than fully credible.[11] See Smith v. Astrue, No. 07-C-955, 2008 WL 794518, at *7 (E.D. Wis. Mar. 24, 2008) (finding error regarding non-compliance harmless).

Ultimately, as the Commissioner notes, I must consider the ALJ's decision as a whole. While perhaps none of the factors cited by the ALJ standing alone would be sufficient, considered together they show that the ALJ's finding was not "patently wrong."

_____

[11]In the credibility context, it makes more sense to rely on SSR 96-7p, which contains its own provision pertaining to non-compliance ("The adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."), than 20 C.F.R. § 404.1530, which by its terms applies to the denial of benefits based on failure to follow prescribed treatment that would restore the claimant's ability to work. The ALJ did not deny the instant application for failure to obtain treatment. To the extent that the ALJ discounted plaintiff's testimony based on failure to obtain treatment without considering any explanations for the failure, aside from noting that he saw the doctor often for other things, plaintiff provides no such explanations now. Therefore, I cannot find any violation of SSR 96-7p harmful. See Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (holding that "the doctrine of harmless error . . . is fully applicable to judicial review of administrative decisions").

14

**C.    Statements From Plaintiff's Children**

Finally, plaintiff challenges the ALJ's evaluation of the testimony of his son and written statement from his daughter.  The ALJ noted that these statements were consistent with plaintiff's allegations but found them inconsistent with plaintiff's failure to obtain specialized treatment.  He further noted that plaintiff's children may have been influenced by their desire to help him obtain benefits.  He therefore gave their statements little weight.  (Tr. at 16.)

These statements were essentially redundant of plaintiff's testimony (which the ALJ fully evaluated), so detailed analysis was not required.  See Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (holding that the ALJ did not err in failing to discuss the claimant's wife's redundant testimony, where the ALJ fully evaluated the claimant's testimony).[12]  In any event, plaintiff fails to demonstrate that the reasons supplied by the ALJ lack support in the record or are otherwise objectionable.[13]

---

[12]This was not a case where the third party testimony filled an important gap or provided crucial corroboration.  Cf. Masch v. Barnhart, 406 F. Supp. 2d 1038, 1048 n.9 (E.D. Wis. 2005); Elbert v. Barnhart, 335 F. Supp. 2d 892, 913 (E.D. Wis. 2004).

[13]Plaintiff's last argument in his main brief is that the VE's opinion was flawed because it was based on an ability to perform light work.  This claim is derivative of those discussed above; plaintiff points to no independent flaw in the VE's testimony.

15

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is **AFFIRMED**, and this case is

**DISMISSED**.  The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of July, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

16